MORRILTON ·COTTON OIL COMPANY *v.* IMBODEN.

Opinion delivered December 19, 1921.

1. LANDLORD AND TENANT—WAIVER OF LIEN.—The fact that a landlord agreed that a firm who were furnishing supplies to his tenant, and who held a mortgage on the latter's crop, should receive and dispose of the crop, on condition that they would pay the rent, did not constitute a waiver of the landlord's lien.

2. LANDLORD AND TENANT—LIABILITY FOR RENT.—Where a firm which was furnishing supplies to a tenant assumed liability to the landlord for the rent, they cannot deduct from the rent the expense of preserving and marketing the crop.

Appeal from Conway Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*Strait & Strait,* for appellant.

Appellant did not buy the cotton grown by Carden, and the fact that Carden turned over to appellant the money he received for his cotton sold to other parties would not make it liable to the landlord. To become liable appellant must have received the property itself, with knowledge of the landlord's lien. 72 Ark. 132; 56 Ark. 499; 70 Ark. 79.

Imboden waived his landlord's lien on the portion of the crop which he asked the oil company to look after and see that it was properly gathered and handled. He thereby appointed the oil company his agent for this purpose. 69 Ark. 581; 103 Ark. 91; 60 Ark. 357. And consented to the sale of the crop upon which he had a lien, thereby waiving said lien. 60 Ark. 357; 65 Ark. 222.

*Edward Gordon,* for appellee.

The consent on the part of Imboden that the oil company receive the crop and look out for the proceeds and protect him in his rent did not amount to a waiver of his landlord's lien. 69 Ark. 584.

On who wrongfully takes and sells property upon which there is a landlord's lien is liable to the landlord. 95 Ark. 32.

SMITH, J. This is a suit for the conversion of a crop of cotton by the Morrilton Cotton Oil Co., grown by J. G. Carden as a tenant on the farm of J. H. Imboden. The suit was brought upon the theory that the oil mill had converted the crop of cotton upon which Imboden had a landlord's lien. The rent due Imboden was for the year 1920 and amounted to $2500. The oil mill contracted to furnish Carden the supplies and money to make and gather the crop, and as security for these advances took a mortgage on the crop. A number of lawsuits grew out of these relations. Imboden attached the crop of Carden, and served a writ of garnishment upon the oil mill, which filed an answer admitting it had received cotton and hay subject to Imboden's lien in the sum of $1468.24, and paid this sum into court. Carden sued the oil mill for damages for the alleged failure to pay the rent to Imboden pursuant to an agreement so to do. The oil mill sued in equity to foreclose the mortgage given it by Carden. The suits brought at law were transferred to equity and all were consolidated. In the trial of this consolidated case, judgment was rendered against Carden for damages against the oil mill; and a decree was entered in favor of the oil mill against Carden for the debt due by him to the oil mill, and a foreclosure of its mortgage was ordered. Imboden's attachment was sustained, and judgment rendered for the rent, and the residue of the crop which had not passed into the hands of the oil mill was ordered sold, and was sold.

The court found that Carden was indebted to Imboden in the sum of $2500 for rent; and that the oil mill had received the gross proceeds of the crop, amounting to something over $2600; and that the proceeds of the crop which had been sold under the attachment amounted to $403.09. After allowing credit for the proceeds of the sale of the attached cotton, and the sum paid into court, the court gave judgment for $628.67, the balance due on account of rent; and this appeal is from that order.

The oil mill concedes that this court has several times held that one who buys or receives cotton with the knowledge that it is covered by a landlord's lien is chargeable with the value or proceeds thereof in his hands in a suit in equity for the conversion of such property; but it insists that it did not receive any of the crop from Carden. This insistence, if true, would excuse the oil mill from liability for the cotton sold by it amounting to $1468.24, and for which it admitted liability in its answer in the garnishment case.

J. J. Scroggins is the president of the oil mill, which is a copartnership; but he also buys cotton on the streets of Morrilton for his own account; and it is the insistence of the oil mill that the cotton of Carden was so purchased; and the testimony of Scroggins is to the effect that he bought the cotton for his own account, but he also testified that he told Carden to go to the mill and settle down there, and that Carden went to the mill and made settlement for his cotton, and that Carden told him that he did not want anything paid on the rent to Imboden until he (Carden) had had a settlement with Imboden, as he expected a deduction of at least a thousand dollars on the rent, and he admits that he told Carden that the oil mill would hold the proceeds of the cotton until a settlement had been made of the rent.

Imboden testified that J. S. Moose, the manager of the oil mill, stated to him that the oil mill wanted to handle the cotton, and that Moose promised to pay the

rent, and, in reliance upon this promise, he allowed the oil mill to control and sell the cotton.

Mr. Moose testified that "we agreed to collect the rent, for the reason that Mr. Carden owed us, and it suited our plans to be in touch with the matter and know how much of the crop was sold and where the proceeds went."

Carden testified that when he gave the mortgage, he transacted the business with Mr. Scroggins, who acted for the oil mill, and that in the fall he sold the cotton on the streets to Scroggins, and when he sold a bale of cotton he would take the check which Scroggins gave him to the bank, and "the bank gave me a statement of how much the cotton brought, and I took it down to the oil mill; when I would sell a bale of cotton I would take the check to the bank, and they would give me a ticket and show on it the price the cotton brought, and I would take it down to the oil mill and get credit for it.  The oil mill received the funds."

We think this testimony supports the court's finding that the oil mill converted the cotton; and we are of the opinion that the transaction between Scroggins and Carden was merely a method by which they agreed upon the price with which  the  oil  mill should stand charged as each particular lot of cotton was converted to the account of the oil mill, and that the transactions were had pursuant to the agreement between Imboden and Moose that the oil mill would pay the rent.  This agreement that the oil mill should receive, handle and dispose of the crop and pay the rent was not a waiver of the landlord's lien.  *Bigham* v. *Cross,* 69 Ark. 581.

What we have just said disposes of the case except three items aggregating $90.32, which represented advances made by the oil mill for picking the crop, and for which it says it should be paid as expense of preserving and marketing the crop, which constituted the security for both its mortgage and Imboden's lien.  Two answers may be given to this claim.  The first is that

the proceeds of the crop converted by the oil mill exceeded the rent by more than $90.32. The second answer is that, under the agreement between Moose and Imboden, the oil mill company assumed the burden and cost of gathering and disposing of the crop for the privilege of appropriating to the payment of its demand against Carden any sum remaining after the rent was paid.

Decree affirmed.

